IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS A. SMITH, | § | |
| TDCJ-CID NO.1275805, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION H-08-2357 |
| | § | |
| CHRISTINA MELTON CRAIN, *et al.*, | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff Dennis A. Smith is a New Hampshire prisoner currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") as a boarder pursuant to the Interstate Corrections Compact. Proceeding *pro se* and *in forma pauperis*, plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages for alleged violations of his right to out-of-cell recreation, which he claims exacerbated his weight and health issues. (Docket Entries No.1, No.23). The Court will dismiss plaintiff's complaint because it is legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

I. BACKGROUND

In August 2002, New Hampshire prison officials decided to transfer plaintiff to an out-of-state correctional facility. *Smith v. Wrenn*, Civil Action No.07-cv-119-SM (N.H. June 29, 2009). Among the documents prison officials prepared to facilitate the transfer was a Transfer/Discharge Summary dated September 13, 2004, which showed that plaintiff required continuous care for seborrhea, Hepatitis C, and obesity. *Id.*; (Docket Entry, No.1-3, page 9). The Summary was forwarded to Texas officials in late September 2004. *Smith v. Wrenn*, Civil Action No.07-cv-119-SM. On November 5, 2004, Texas officials agreed to take plaintiff and

notified State Classification Committee ("SCC") Chairman Larry Leflore, SCC member Pamela Williams, and Interstate Compact Coordinator Thomas Warren.  Leflore, Williams, and Warren determined that plaintiff would be housed in administrative segregation ("ad-seg") because of his behavioral problems in the New Hampshire prison system.  *Id*.; (Docket Entries No.1, page 18; No.1-3, page 10; No.23, pages 11-12).  On January 18, 2005, plaintiff entered the Texas prison system on the Estelle High Security Unit.  (Docket Entry No.23, page 12).  On March 17, 2006, plaintiff was transferred to the O.B. Ellis ("Ellis") Unit of TDCJ-CID, where he is presently confined in ad-seg.  (Docket Entry No.1, pages 15, 18).

From March 2006, to June 2006, plaintiff was classified as a Level III ad-seg offender on the Ellis Unit, the lowest custody level in ad-seg.  In June 2006, his custody level was raised to Level I, the highest level assigned to an offender in ad-seg.  (Docket Entry No.23, page 1).  On July 11, 2006, Ellis Unit's Disciplinary Hearing Officer Donna K. Cabeen sanctioned plaintiff to fifteen days of cell restriction and the loss of recreational privileges upon finding him guilty of a disciplinary violation.  The next day, Cabeen, Lt. Stephen W. Allee, and Sgt. Oscar H. Gongora demoted plaintiff from Level I to Level II, subject to a thirty day review. (Docket Entry No.1-2, page 2).  Plaintiff's Level II assignment was continued after a thirty day review conducted by Captain E. Navarrette and a thirty day review by Unit Classification Committee members Major Austin B. McComb, Jr., Lt. C. Howerd, and Sgt. William L. Smith. (*Id.*).  On October 3, 2006, Cabeen found plaintiff guilty of another disciplinary violation and sanctioned him to another fifteen day cell restriction and loss of recreation.  (*Id.*).  The same day, Major McComb, Captain Deleta Jones, and Sgt. Smith demoted plaintiff to Level III.  (*Id.*).  On October 25, 2006, plaintiff was found guilty of another disciplinary violation and sanctioned by

Captain Jones to fifteen day cell restriction and loss of recreation.  (*Id.*).  Plaintiff's Level III status was continued upon further review by McComb, Jones and Sgt. Livas on November 17, 2006.  (*Id.*, page 3).  On December 6, 2006, Jones, Howerd and Sgt. Lanningham promoted plaintiff to Level II status.  (*Id.*).  On March 14, 2007, plaintiff was promoted to Level I status.  (*Id.*).

Plaintiff complains that while he was classified as a Level II and Level III offender, from July 11, 2006, to March 14, 2007, his out-of-cell recreation was cancelled eight times on Friday and twenty-eight times on other business days in violation of the 2005 Administrative Segregation Plan ("Ad-Seg Plan"), and the Texas Department of Criminal Justice Disciplinary Rules and Procedures for Offenders ("Disciplinary Rules").  (Docket Entry No.1-2, page 3).  Plaintiff complains that such cancellations and the policies giving rise to the same violate the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's Due Process and Equal Protection Clauses.  (Docket Entry No.1).  He also complains about policy omissions and his acceptance as a boarder in the TDCJ system.  (*Id.*).

## II. DISCUSSION

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA").  Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. §

3

1997(e), and 28 U.S.C. § 1915A(b).  In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist."  *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).  A complaint fails to state a claim if the facts alleged do not state a claim to relief that is "plausible" on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  (*Id.*).

### A. Ad-Seg Plan and Disciplinary Rules

The Ad-Seg Plan,[1] signed by TDCJ-CID Director Doug Dretke on February 14, 2005, "establishes uniform rules and regulations to guide staff in both the conditions and procedures relating to the segregated offender."  Administrative Segregation Plan, February 2005, page i.  Under such plan, ad-seg is defined as a "non-punitive, maximum custody status

---

[1] The Court takes judicial notice of the Texas Department of Criminal Justice Correctional Institutions Division Administrative Segregation Plan February 2005, that was filed and docketed in *Necessary v. Dretke*, Civil Action No.4:04-2072 (S.D. Tex. Dec. 6, 2006) (Docket Entry No.65-2, pages 2-19).  All references to the Ad-Seg Plan shall be made to the page number of the Ad-Seg Plan and not the electronic entry.

involving separation of an offender from the general population within the prison institution for the purpose of maintaining safety, security and order among general population offenders, correctional personnel, and the public." *Id*., page 1. The custody level to which an offender is assigned in administrative segregation is based upon the offender's behavior. *Id.*, page 2. The level assigned to the offender may be changed by the Administrative Segregation Committee ("ASC") and the SCC. *Id.* A Level I offender is one who has generally maintained good behavior or non-assaultive misbehavior during the preceding ninety days of review. *Id*., page 2-3. A Level II offender may be a chronic rule violator or have a recent history of in-prison assaultive or aggressive behavior within the last ninety days, which is documented by a major disciplinary case. *Id.*, page 3. A Level III offender is one who has been charged with a major disciplinary case within the last thirty days and is assaultive or aggressive in nature, "*i.e.,* institutional violence, weapons possession, assaults on staff or offenders or fighting with or without a weapon." *Id.*

The Ad-Seg Plan provides conditions by which offenders are afforded out-of-cell recreation, weather permitting and "in accordance with the Level to which the offender has been assigned, unless security or safety considerations dictate otherwise." *Id*., page 11. Offenders assigned to Level I custody status are permitted out-of-cell recreation one hour seven days a week with one hour of outdoor recreation weekly. *Id.* Levels II and III offenders are allowed out-of-cell recreation one hour five days a week with one hour of outdoor recreation weekly. *Id*. Alternative days are to be made available if outdoor recreation is cancelled due to inclement weather. *Id*. "Segregation offenders may, on a case-by-case basis, be denied the opportunity for out-of-cell recreation when fulfillment of the requirement would create an immediate and serious

threat to the physical safety or security of the offender, other offenders, or staff." *Id.*, pages 11-12.  The denial of offender recreation must be documented and a reason given for such denial. *Id.*, page 12.

B. Plaintiff's Claims

1. Recreation Policies and Procedures

Plaintiff claims that TDCJ's chronic lack of staffing and the physical configuration of the Ellis Unit was not conducive to the establishment of an ad-seg unit of 120 inmates; nevertheless, in 1999, TDCJ-CID administrators determined that an ad-seg unit should be set up on the Ellis Unit.  (Docket Entry No.1, page 15).  To overcome the physical obstacles and provide out-of-cell recreation opportunities for ad-seg inmates as dictated by the Ad-Seg Plan, plaintiff claims that Ellis Unit Warden Alfred C. Janicek had four one-man inside exercise cages and six one-man outside exercise cages constructed on the Unit.[2]  (Docket Entries No.1, page 15, No.1-2, page 1).  Janicek then had ad-seg inmates grouped by custody level and rotated by groups between the indoor and outdoor cages every other day.  (Docket Entry No.1, page 15).  Janicek did not account for weather related cancellations and made no provisions to provide alternative recreational opportunities if outside recreation were cancelled.  (Docket Entry No.1-2, page 1).  Plaintiff claims that the rotation schedule without a provision for alternative recreational opportunities on a prison unit with foreseeable constraints violates the Eighth Amendment's prohibition against cruel and unusual punishment,[3] the Due Process Clause, and

---

[2] Plaintiff indicates that the Ellis Unit has recently increased the outdoor cages to ten.  (Docket Entry No.1, page 15).

[3] Plaintiff also complains that the creation of the ad-seg unit "was done maliciously and sadistically" (Docket Entry No.1-2, page 1), but he states no facts to support such complaint.

the Equal Protection Clause "because the Administrative Segregation Level policy/procedure creates a suspect class.," (*Id.*, pages 1-2).

Plaintiff also claims that the Warden Janicek, Assistant Warden Gary Wakefield, Assistant Warden Richard F. Thomas. Jr., and defendants McComb, Jones, Navarrete, Cabeen, Allee, Howerd, Gongora, Smith, Livas, and Lanningham adopted a Unit procedure to schedule the one-hour, five-days-a-week recreation requirement for Level II and III offenders, like plaintiff, to the business week, *i.e.*, Monday through Friday, and then cancelled the out-of-cell recreation when it conflicted with other business day activities, including SCC hearings, in-service training, bird nest removal, lock and door maintenance, electrical work, welding work, plumbing, maintenance, and painting. (Docket Entries No.1, page 16; No.23, pages 10-11). He also claims that these administrators refused to provide weekend make-up recreational opportunities for Level II and III offenders because of the recreation business week requirement. (Docket Entry No.1, page 16).

"[E]xperienced prison administrators, and not judges, are in the best position to supervise the daily operations of prisons across this country." *Johnson v. California*, 543 U.S. 499, 529 (2005) (Thomas, J., dissenting) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977)). For this reason, the courts owe "substantial deference to the professional judgment of prison administrators" and their restrictive prison regulations may be permissible if they are "reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 529 (2006) (internal citations and quotations omitted). Prison officials are not required to adopt the policy least

7

restrictive of a prisoner's rights, so long as the policy itself is reasonable. *Talib v. Gilley*, 138 F.3d 211, 215 n. 4 (5th Cir. 1998).

In this case, plaintiff has articulated several legitimate and rational penological interests that are served by the manner in which Ellis Unit administrators have utilized the exercise cages and organized the rotation system, *i.e.*, the physical configuration of the Ellis Unit, the shortage of prison staff, and the need to provide regular out-of-cell recreation to all ad-seg inmates on the Unit. Plaintiff's complaints that the implementation of the rotation system without weather-related alternatives, the business week schedule, and the cancellation practices infringe on his constitutional rights is based on a faulty assumption that he has an absolute right to out-of-cell recreation. Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir. 2001); *Stewart v. Winter*, 669 F.2d 328, 336 n. 19 (5th Cir. 1982); *see also Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (affirming limits on recreation time). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821 at *1 (citation omitted). In this case, plaintiff states no facts that would satisfy the threshold requirements for an Eighth or Fourteenth Amendment violation.

### a. Eighth Amendment

The Eighth Amendment requires prison officials to provide humane conditions of confinement, ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). Conditions that result in "unquestioned and serious

8

deprivation of basic human needs," or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992) (citations omitted).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety.  *Farmer*, 511 U.S. at 834 (citations omitted).

The Fifth Circuit has always and only held that an extended deprivation of exercise opportunities might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case.  *Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982) (noting that factors, such as cell size, the amount of time the inmate spends in his cell each day, and the overall duration of confinement together with the inmate's physical and other needs must be considered in determining whether an inmate is denied the opportunity for regular physical exercise); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979) (noting that "confinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise ... may make out an eighth amendment violation").  In this case, plaintiff is serving a thirty year sentence imposed by a New Hampshire Court on April 18, 1996, in cause number 96-S-304-F.  Texas Court website.[4]  He is incarcerated in the Ellis Unit's ad-seg, where he is confined to a single cell for at least twenty hours or more a day.  *See* Ad-Seg Plan, page 1 (stating offender considered to be in ad-seg if separated from general population by confinement in a cell for twenty hours or more a day without a disciplinary hearing).  He suffers from obesity, hypertension, and liver disease.

---

[4] http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=04849539

From mid-March through May 2006, plaintiff was classified as a Level III ad-seg offender. During this period, his business week recreation opportunities were cancelled nine times--once in March, four times in April, and four times in May, due to lack of staff. (Docket Entry No.1-3, page 12). Business week recreation opportunities were cancelled four more times in May because of an institutional lockdown. (*Id*.). During this same period, forty-one days recreational opportunities were available to plaintiff during the business week. (*Id*.).

In June 2006, plaintiff was assigned to Level I status, entitling him to out-of-cell exercise seven days a week. During this time, out-of-cell recreation was cancelled six times due to lack of staff. Out-of-cell recreation was available twenty-four days during the same period. (*Id.*).

From mid-July 2006, to mid-March 2007, plaintiff was subject to specific restrictions on his opportunities to out-of-cell recreation three times due to his own misconduct, for which he was demoted to a lower custody level and/or restricted to his cell as a sanction for violating disciplinary rules.[5] During this same time period, Friday recreational opportunities were cancelled eight times—twice in July and September 2006, once in August, October, November 2006, and once in January 2007. (Docket Entry No.1-3, page 12). None of these cancellations were weather-related.[6] (*Id*.). During this same time period, Friday recreational opportunities were available twenty-seven times. (*Id*., pages 12-14).

Plaintiff's pleadings also show that Monday through Thursday recreation opportunities were cancelled twenty-eight times between mid-July 2006, and mid-March 2007—

---

[5] Following his demotion to Level II custody status on July 12, 2006, plaintiff was subjected to the Ad-Seg Plan's five-day business week recreation restriction.

[6] Four cancellations were due to lack of staff, one for staff training, and the remaining cancellations were for facility improvements. (Docket Entry No.1-3, pages 12-14).

once in July and November 2006, once in January, February, and March 2007, twice in December 2006, three times in October 2006, four times in August 2006, and six times in September 2006.  (*Id.*).  Only one cancellation was weather-related.  (*Id.*, page 13).  During this same time, 120 recreation opportunities were available to Level II and III offenders Monday through Thursday.  (*Id.*, pages 12-14).  Recreation was cancelled one full business week in September 2006, due to an institutional lockdown.  (*Id.*, page 13).

According to plaintiff, from March 15, 2007, to July 22, 2008, out-of-cell recreation was available 414 times and cancelled 137 times.  (*Id.*, pages 14-19).  Recreation was cancelled twice for inclement weather, nine days for maintenance, thirty-three days because for institutional lockdowns, twenty-four days for lack of staff, twice for SCC meetings, twice because of offender incidents, and twice because an officer lost a key and the lock was changed. (*Id.*).  Recreation was cancelled sixty-one days from April 2, 2008, to June 3, 2008, while officials waited on supplies to reinforce the recreation cages and for the completion of construction to reinforce the cages.  (*Id.*, pages 15-17).

In all, plaintiff's pleadings show that he had ample out-of-cell recreation opportunities, which greatly outnumbered the days that he was deprived of the same.  With the exception of the sixty-one day cancellation from April 2nd to June 3rd, 2008, plaintiff's pleadings show no extended periods of recreation restriction lasting more than eight days. Moreover, none of the reasons stated for such cancellations amounts to deliberate indifference by prison officials.  Likewise, plaintiff's complaints of periodic deprivation of out-of-cell recreation, resulting from the Ellis Unit's physical configuration, the rotation schedule, and the business-week and cancellation policies are not sufficiently serious to state an Eighth Amendment

11

violation. *Compare McGruder*, 608 F.2d at 1025 (noting that "confinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise ... may make out an eighth amendment violation"). Accordingly, plaintiff's Eighth Amendment claims against TDCJ officials are subject to dismissal.

<u>b. Due Process</u>

Due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incident of prison life, or to those that extend the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). The Fifth Circuit has held that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995). Furthermore, the protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" that are adverse to a prisoner. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification. *Sandin*, 515 U.S. at 484. A recreation restriction imposed as a disciplinary punishment does not implicate a liberty interest under the Due Process Clause. *See e.g., Antone v. Preschel*, 347 Fed. Appx. 45, 2009 WL 2981899 (5th Cir. 2009); *Payne v. Dretke*, 80 Fed. Appx. 314, 2003 WL 22367564 (5th Cir. 2001). Likewise, plaintiff does not allege, and the record does not show, that the restrictions placed on out-of-cell recreation for Level II and III offenders in ad-seg at the Ellis Unit constitute an atypical and significant hardship that would give rise to due process concerns. Cases where segregated confinement is sufficiently atypical to implicate a due process liberty interest involve circumstances much harsher than those presented

here.  *Compare Wilkerson v. Stalder*, 329 F.3d 431 (5th Cir. 2003) (noting that due process might have been violated where the plaintiff had been kept on lock-down status for thirty years).

<u>c. Equal Protection</u>

The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  Aside from classifications that disadvantage a "suspect class," or impinge on the exercise of a "fundamental right, equal protection claims are analyzed under the rationality test."  *Id*. at 216-17.  In this case, the Director of TDCJ-CID has established the Ad-Seg Plan that "discriminates" between custody level offenders who are eligible for five days of recreation and those who are eligible for seven days of recreation based on their behavior in prison.  The Ellis Unit administrators have further discriminated between Level I offenders and Levels II and III offenders by restricting the recreational opportunities of Levels II and III offenders to certain days of the week.  This inequality in classification is not based upon a suspect class, such as race, and therefore is subject to only a rational basis review.

A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).  Merely treating two groups of inmates differently does not necessarily violate the equal protection clause.  To demonstrate a violation of his equal protection rights, plaintiff must show that he has been treated differently from similarly-situated inmates and that the disparity in treatment is not rationally related to a legitimate governmental interest.  *See McGinnis v. Royster*, 410 U.S. 263, 270-71 (1973).  He must also state facts that would show the existence of purposeful discrimination, which implies that the decision maker selected a particular course of

action at least in part because of the adverse impact it would have on an identifiable group. *Johnson v. Rodriguez*, 110 F.3d 299, 306-307 (5th Cir. 1997). Plaintiff states no facts to show any discriminatory animus by prison officials with respect to his recreational opportunities or that the recreational policies and practices were not rationally related to a legitimate government purpose. Vague and conclusory allegations are insufficient to raise an equal protection claim. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990).

Accordingly, plaintiff's Fourteenth Amendment claims regarding out-of-cell recreation and the policies and practices established by defendants to facilitate such recreation on the Ellis Unit are frivolous and subject to dismissal.

### 2. Disciplinary Rules

Plaintiff complains that defendants have violated the Disciplinary Rules with respect to the out-of-cell recreation afforded an ad-seg inmate who is given cell restriction as punishment for a disciplinary offense. (Docket Entry No.1, page 16). The Disciplinary Rules provide that an ad-seg inmate sanctioned to cell restriction as punishment for a disciplinary violation shall not exceed thirty days. Disciplinary Rules, III.C.2, page 9.[7] The Disciplinary Rules also provide that when cell restriction or loss of recreation privileges are imposed on an ad-seg inmate, he "shall be allowed physical recreation out of the cell for a one-hour period every seven days. This requirement applies even if the offender has received only a single term of cell restriction or loss of recreation privileges." *Id.*

Plaintiff claims that Ellis Unit officials require a sanctioned ad-seg inmate to wait seven days to earn the one hour out-of-cell recreation on Friday, the only day permitted for those

---

[7] Texas Department of Criminal Justice Disciplinary Rules and Procedures for Offenders, April 2010, at http://www.tdcj.stte.tx.us/publications/cid/Disciplinry_Rules_and_Procedures_for_Offenders_April_2010.pdf.

on cell restriction.  (Docket Entry No.1, pages 16-17).  Plaintiff notes that an inmate convicted of

a disciplinary offense on a Monday must wait more than seven days to earn the one hour out-of-

cell exercise privilege. (*Id*., page 17).  Plaintiff maintains that it is not unusual for an inmate on

cell restriction to serve the entire sanction without any out-of-cell exercise and without

consultation with medical staff.  (*Id*.).  Plaintiff's pleadings show that twice he was required to

wait more than seven days for recreation following a disciplinary conviction.[8]  Plaintiff's

pleadings do not show that he served the entire disciplinary sanction without any out-of-cell

exercise.  Still, plaintiff claims that such policy, as implemented, constitutes cruel and unusual

punishment and violates due process.  (Docket Entry No.1-2, page 1).

Plaintiff complains about conditions that are far from extraordinary to an inmate

on cell restriction; therefore, he has not alleged the violation of an existing due process interest.

*See Sandin*, 515 U.S. at 484-86.  Moreover, he is not claiming that he is treated any differently

than any other ad-seg inmate subject to disciplinary cell restriction; therefore, his equal

protection claim is frivolous.  *See McGinnis*, 410 U.S. at 270.  Like his other complaints about

the short periods of out-of-cell recreation deprivation, the recreation restrictions imposed as a

sanction for a disciplinary violation simply do not rise to the level of cruel and unusual

punishment.  *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).  Moreover, the mere failure

of prison authorities to follow the Disciplinary Rules does not, without more, give rise to a

constitutional violation.   *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

---

[8] Plaintiff's pleading show that recreation was cancelled for service training on Friday, July 14, 2006, following plaintiff's disciplinary conviction on July 11, 2006.  (Docket Entry No.1-3, page 12).  Recreation was provided on Friday, July 21, 2006, ten days after plaintiff was given cell restriction.  (Docket Entry No.23, page 3).  Recreation was provided on Friday, October 6, 2006 and Friday, October 13, 2006, following plaintiff's disciplinary conviction on October 3, 2006, for which he was given fifteen day cell restriction.  (*Id*.).  Recreation was cancelled on October 27, 2006 for lack of staff, following plaintiff's disciplinary conviction on October 26, 2006.  (Docket Entry No.1-3, page 13).  Recreation was provided on Friday November 3, 2006.  (Docket Entry No.23, page 3).

Accordingly, plaintiff's complaints of defendants' alleged violation of the Disciplinary Rules regarding cell and recreation restriction are subject to dismissal as legally frivolous.

### 3. Policy Omissions

Plaintiff complains that in promulgating Administrative Directive 03.50 ("AD 03.50"), which mandates the creation of the Ad-Seg Plan, Texas Board of Criminal Justice Chairman Christina Melton Crain and Executive Director Brad Livingston failed to insert a provision barring the ASC and SCC from demoting an inmate to a lower custody level if such demotion would result in a violation of the inmate's statutory and constitutional right to recreation; he also complains that they failed to insert a provision requiring the same committees to contact medical personnel to determine if such demotion would result in a violation of the Eighth and Fourteenth Amendments. (Docket Entries No.1, page 6; No.23, page 9).  He further complains that Crain and Livingston failed to include a provision in the Disciplinary Rules to prohibit the sanctioning an ad-seg inmate to cell restriction for a disciplinary violation that would result in the loss of out-of-cell recreation under the conditions present on the Ellis Unit.  (Docket Entry No.1, pages 19-20).

Plaintiff claims because the Ad-Seg Plan has no provision to bar a demotion, defendants Leflore, Williams, McComb, Jones, Navarrete, Cabeen, Allee, Howerd, Gongora, Smith, Livas, and Lanningham demoted plaintiff under dangerous and threatening conditions caused by chronic understaffing and the physical configuration of the Ellis Unit, of which they were aware or should have been aware.  (Docket Entry No.23, page 10).  Plaintiff further complains that defendants Leflore, Williams, McComb, Jones, Navarrete, Cabeen Allee, Howerd, Gongora, Smith, Livas, and Lanningham made no effort to contact medical personnel to

16

inquire if demoting plaintiff under such circumstances and thereby depriving him of some of the out-of-cell exercise time to which he was entitled as a Level II or III offender, could have compromised his medical condition.  (*Id*., page 11).

To successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  Each defendant must either actively participate in the acts complained of or implement unconstitutional policies that result in injury. *Mouille v. City of Live Oak, Texas*, 977 F.2d 924, 929 (5th Cir. 1992).  Liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation.  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Supervisory liability exists even without overt personal participation in the offensive act if the supervisor implements "a policy that is 'itself [] a repudiation of constitutional rights' and [is] 'the moving force of the constitutional violation.'"  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)).

Plaintiff states no facts to show that Chairman Christina Melton Crain or Executive Director Brad Livingston participated in denying him recreation or demoting him or that they promulgated or implemented AD-03.50 or the February 2005 Ad-Seg plan or the Disciplinary Rules.  Under Texas law, neither Livingston nor Crain are authorized to promulgate such policies.  Texas law authorizes the TDCJ-CID Director to promulgate official policies relating to inmate life.  *See* TEX. GOV'T CODE ANN. § 494.002 (authorizing director of TDCJ-CID to adopt policies governing inmate life).  In this case, Director Janie Cockrell promulgated

the revised AD-03.50 and Director Doug Dretke promulgated the Ad-Seg Plan.  Plaintiff simply sues Crain and Livingston because of their supervisory roles.

Plaintiff, however, alleges no facts that would give rise to a cognizable claim against any defendant on the ground that the omission of a provision authorizing a bar or a deferral of a demotion for medical reasons in the AD-03.50, the Ad-Seg Plan, or the Disciplinary Rules violates the Constitution or federal law.  Plaintiff bears the responsibility for his own behavior and therefore, for his ad-seg level custody assignment and the opportunities for out-of-cell recreation associated with such assignment.  Moreover, plaintiff has not shown that he is unable to perform some exercises in his cell.  Plaintiff's claims regarding the omission of a policy barring demotion in the Ad-Seg Plan and a policy barring cell restriction in the Disciplinary Rules are frivolous and subject to dismissal.

Furthermore, inmates do not have a protected property or liberty interest in their custodial classifications.  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citation omitted).  "Classification of prisoners is a matter left to the discretion of prison officials[,]" and they "should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order."  *McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5th Cir. 1990).  Absent a showing that prison officials have abused their discretion, a federal court should be "loathe to interfere with custodial classifications established by prison officials."  *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 731, 735 (2001).   Plaintiff states no facts to show that defendants abused their discretion in demoting plaintiff following his disciplinary convictions.  His conclusory claims, therefore, are subject to dismissal.

18

### 4. Acceptance and Transfer

Plaintiff complains that Executive Director Brad Livingston, Interstate Compact Coordinator Thomas Warren, SCC Chairman Larry Leflore, and SCC member Pamela Williams acted in bad faith by their acceptance of plaintiff into TDCJ under the Interstate Corrections Compact and that their actions were the proximate cause all of his constitutional violations. (Docket Entry No.1, page 17).   Plaintiff claims that these defendants were aware before his arrival in Texas that TDCJ was severely understaffed and that he was obese and would require continuous care.  (*Id.*).   He claims that that they also knew that he would be assigned to ad-seg and that he would most likely be demoted given that he was being transferred involuntarily and entering a foreign system.  (*Id.*).   Plaintiff contends that these defendants also knew that because of the physical constraints at the Ellis Unit and chronic staffing shortages, plaintiff would not receive the exercise he required and he would be housed with mentally ill patients.  (*Id.*, page 18).

Interstate transfers are constitutional, and inmates have no protected liberty interest against interstate transfers.  *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (holding "an interstate prison transfer, including one from Hawaii to California, does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself"); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (no liberty interest, a necessary element of a procedural due process claim, implicated in interstate transfer, and interstate transfer does not impose atypical and significant hardship on the inmate).  Therefore, defendants did not violate plaintiff's right to due process of law by accepting plaintiff as an interstate boarder in the Texas prison system.

Likewise, defendants did not violate plaintiff's right to due process by transferring him to the Ellis Unit's ad-seg. The Constitution itself "does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkerson v. Austin*, 545 U.S. 209, 221-22 (2005). A state prisoner does not have a constitutional right to be incarcerated in the prison of his choice. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). "[A]dministrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995)).

Finally, plaintiff alleges that Executive Director Brad Livingston engaged in cruel and unusual punishment and deprived plaintiff of due process by failing to adequately staff the Ellis Unit, which resulted in plaintiff's deprival of out-of-cell recreation. (Docket Entry No.1, page 20). Plaintiff states no facts to show that Executive Director Brad Livingston was personally involved in staffing the Ellis Unit, that he implemented any unconstitutional policies that would cause the Ellis Unit to be understaffed, or that the Ellis Unit was so understaffed as to violate an inmate's constitutional rights. Plaintiff's claim is conclusory and therefore, subject to dismissal.

### III. CONCLUSION

Based on the foregoing, the Court ORDERS plaintiff's civil rights complaint is DISMISSED, with prejudice, as legally frivolous and for failure to state a claim under 28 U.S.C. § 1915A (b). All pending motions are DENIED.

The Clerk will provide a copy of this order by facsimile transmission, regular mail, or e-mail to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084,

Austin, Texas, 78711, Fax: 512-936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville,

Texas 77342-0629, Fax: 936-437-4793; and the District Clerk for the Eastern District of Texas,

211 West Ferguson, Tyler, Texas  75702, Attention: Manager of the Three-strikes List.

      SIGNED at Houston, Texas, this 19th day of August, 2010.

                             MELINDA HARMON
                        UNITED STATES DISTRICT JUDGE